Joel E. Elkins (SBN 256020)
jelkins@weisslawllp.com
**WEISSLAW LLP**
9100 Wilshire Boulevard #725 E.
Beverly Hills, CA 90210
Telephone: 310/208-2800
Facsimile: 310/209-2348

*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| STEPHEN BUSHANSKY, | Case No. |
| Plaintiff, | |
| vs. | **COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** |
| EIDOS THERAPEUTICS, INC., NEIL KUMAR, SUZANNE SAWOCHKA HOOPER, WILLIAM LIS, ALI SATVAT, DOUGLAS ROHLEN, and UMA SINHA, | JURY TRIAL DEMANDED |
| Defendants. | |

Plaintiff Stephen Bushansky ("Plaintiff"), on behalf of himself and all others similarly situated, upon information and belief, including an examination and inquiry conducted by and through his counsel, except as to those allegations pertaining to Plaintiff, which are alleged upon personal belief, alleges the following for his Complaint:

**NATURE OF THE ACTION**

1.      This is an action brought by Plaintiff against Eidos Therapeutics, Inc. ("Eidos" or the "Company") and the members of Eidos's Board of Directors (the "Board" or the "Individual

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9, and to enjoin the vote on a proposed transaction, pursuant to which Eidos will be acquired by BridgeBio Pharma, Inc. ("BridgeBio") through its wholly owned subsidiaries Globe Merger Sub I, Inc. ("Merger Sub I") and Globe Merger Sub II, Inc. ("Merger Sub II") (the "Proposed Transaction").

2. On October 5, 2020, Eidos and BridgeBio issued a joint press release announcing that they had entered into an Agreement and Plan of Merger dated October 5, 2020 (the "Merger Agreement") to sell Eidos to BridgeBio. Under the terms of the Merger Agreement, each holder of Eidos common stock will have the right to receive, at their election, either (i) 1.85 shares of BridgeBio common stock, or (ii) $73.26 in cash, subject to proration such that the aggregate amount of cash is no greater than $175 million, for each share of Eidos common stock they own (the "Merger Consideration"). Upon closing of the Proposed Transaction, Eidos stockholders are expected to own between 16% and 18% of the outstanding shares of BridgeBio common stock.

3. On December 16, 2020, defendants filed a Schedule 14A Proxy Statement (the "Proxy Statement") with the SEC. The Proxy Statement, which recommends that Eidos stockholders vote in favor of the Proposed Transaction, omits or misrepresents material information concerning, among other things: (i) Eidos and BridgeBio management's financial projections; (ii) the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by the special committee of the Board's ("Special Committee") financial advisor, Centerview Partners LLC ("Centerview"); (iii) Centerview's potential conflicts of interest; and (iv) the background of the Proposed Transaction. Defendants authorized the issuance of the false and misleading Proxy Statement in violation of Sections 14(a) and 20(a) of the Exchange Act.

- 2 -
COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

4.      In short, unless remedied, Eidos's public stockholders will be irreparably harmed because the Proxy Statement's material misrepresentations and omissions prevent them from making a sufficiently informed voting decision on the Proposed Transaction.  Plaintiff seeks to enjoin the stockholder vote on the Proposed Transaction unless and until such Exchange Act violations are cured.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. §1331 (federal question jurisdiction).

6.      The Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations in this District, or is an individual who has sufficient minimum contacts with this District so as to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.      Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391 because: (i) the Company's principal executive offices are located in this District; (ii) one or more of the defendants either resides in or maintains executive offices in this District; and (iii) defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District.

## THE PARTIES

8.      Plaintiff is, and has been at all times relevant hereto, a continuous stockholder of Eidos.

9.      Defendant Eidos is a Delaware corporation, with its principal executive offices located at 101 Montgomery Street, Suite 2000, San Francisco, California 94104.  The Company is a clinical stage biopharmaceutical company focused on addressing the large and growing unmet need in

- 3 -
COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

diseases caused by transthyretin ("TTR") amyloidosis ("ATTR").  Eidos's common stock trades on the NASDAQ Global Select Market under the ticker symbol "EIDX."

10.    Defendant Neil Kumar ("Kumar") has been Chief Executive Officer ("CEO") and a director of the Company since March 2016.  Defendant Kumar is also a co-founder of BridgeBio and has been CEO and a director of BridgeBio since April 2015.

11.    Defendant Suzanne Sawochka Hooper ("Hooper") has been a director of the Company since August 2020.

12.    Defendant William Lis ("Lis") has been a director of the Company since December 2018.

13.    Defendant Ali Satvat ("Satvat") has been a director of the Company since June 2018.  Defendant Satvat has also been a director of BridgeBio since March 2016.

14.    Defendant Douglas Rohlen ("Rohlen") has been a director of the Company since August 2020.

15.    Defendant Uma Sinha ("Sinha") has been a director of the Company since December 2019.  Defendant Sinha has also served as the Company's Chief Scientific Officer ("CSO") since June 2016.  Defendant Sinha serves as the CSO at BridgeBio and CSO of other BridgeBio subsidiaries.

16.    Defendants identified in paragraphs 10-15 are referred to herein as the "Board" or the "Individual Defendants."

**OTHER RELEVANT ENTITIES**

17.    BridgeBio is a Delaware corporation, with its principal executive offices located at 421 Kipling Street, Palo Alto, California 94301.  BridgeBio was founded in 2015 to identify and advance transformative medicines to treat patients who suffer from Mendelian diseases, which are

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

diseases that arise from defects in a single gene, and cancers with clear genetic drivers. BridgeBio's common stock trades on the NASDAQ Global Select Market under the ticker symbol "BBIO."

18.    Merger Sub I is a Delaware corporation and an indirect wholly owned subsidiary of BridgeBio.

19.    Merger Sub II is a Delaware corporation and a direct wholly owned subsidiary of BridgeBio.

## SUBSTANTIVE ALLEGATIONS

### Background of the Company

20.    Eidos is a clinical stage biopharmaceutical company focused on addressing the large and growing unmet need in diseases caused by ATTR. The Company seeks to treat this family of diseases by targeting them at their collective source by stabilizing TTR. TTR is a protein that occurs naturally in the form of a tetramer (a molecular structure consisting of four identical subunits, or monomers) and performs multiple beneficial roles, including the transport of essential hormones and vitamins. Eidos is building upon its mechanistic understanding of ATTR to develop a potentially disease-modifying treatment for this family of diseases.

21.    The Company's product candidate, acoramidis ("AG10"), is an orally-administered small molecule designed to potently stabilize tetrameric TTR, thereby halting at its outset the series of molecular events that give rise to ATTR. In 2018, the U.S. Food and Drug Administration ("FDA") and the European Medicines Agency ("EMA") granted orphan drug designation to AG10 for the treatment of ATTR. The EMA also granted a product-specific pediatric investigational plan waiver for AG10.

22.    The Company's approach to the treatment of ATTR is designed to mimic a naturally-occurring variant of the TTR gene ("T119M") that is considered a "rescue mutation" because it has been shown to prevent ATTR in individuals carrying pathogenic, or disease-causing, mutations in the

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

TTR gene. Eidos believes this specific binding mode underlies the positive results of the Company's Phase 1 and Phase 2 clinical trials of AG10.

23. On October 29, 2020, Eidos announced its third quarter 2020 financial results and business update, noting that the Company had completed enrollment of its Phase 3 clinical trial of AG10 for patients with ATTR.

**The Proposed Transaction**

24. On October 5, 2020, Eidos and BridgeBio issued a joint press release announcing the Proposed Transaction. The press release states, in relevant part:

MOUNTAIN PALO ALTO, Calif. and SAN FRANCISCO, Oct. 05, 2020 -- BridgeBio Pharma, Inc. (Nasdaq: BBIO), a company focused on genetic diseases, and Eidos Therapeutics, Inc. (Nasdaq: EIDX), a company focused on transthyretin (TTR) amyloidosis (ATTR), today announced they have entered into a definitive agreement under which BridgeBio has agreed to acquire all of the outstanding common stock of Eidos it does not already own, representing approximately 36.3% of Eidos' outstanding shares. Eidos stockholders will have the right to receive in the transaction, at their election, either 1.85 shares of BridgeBio common stock or $73.26 in cash per Eidos share in the transaction, up to an aggregate maximum of $175 million of cash. The agreement was unanimously approved by BridgeBio's Board of Directors and was approved by Eidos' Board of Directors based upon the unanimous recommendation of a special committee of independent directors of Eidos.

With this transaction, BridgeBio fully and formally welcomes Eidos back into its vibrant ecosystem of innovation. Eidos is developing acoramidis, a potential best-in-class TTR stabilizer, for patients with ATTR cardiomyopathy and polyneuropathy.

"With the completion of screening in the Phase 3 ATTRibute-CM study of acoramidis and expected enrollment of more than 600 participants, now is the time to begin laying the groundwork for a global launch. This transaction removes the operational complexity of the current ownership structure and allows us to fully unlock the potential of this investigational medicine for patients and investors," said Neil Kumar, Ph.D., founder and CEO of BridgeBio and CEO of Eidos. "Bringing Eidos fully back to BridgeBio positions us to invest in all opportunities around acoramidis, including subsequent studies to potentially broaden the evidence for its usage, and accelerate its commercial development using BridgeBio's established infrastructure. We are excited to welcome acoramidis back into an ecosystem where cutting-edge science is being done across inherited diseases and targeted oncology."

BridgeBio applies its discover, create, test and deliver platform to target well described genetic diseases at their source. Using this platform Eidos will be able to capitalize on BridgeBio's global clinical development and regulatory expertise, its developing

- 6 -

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

commercial infrastructure, and its broader capital base to reach more patients more effectively. BridgeBio will be able to invest in novel formulations and studies of acoramidis to maximize its long-term potential benefit to ATTR patients, as well as developing its commercial infrastructure.

Eidos and acoramidis will also become the keystone in BridgeBio's growing cardiorenal portfolio, which includes drug development in autosomal dominant hypocalcemia type 1 (ADH1) and primary hyperoxaluria type 1 (PH1) as well as undisclosed precision cardiology drug discovery programs.

Eidos completed screening in September for its pivotal Phase 3 ATTRibute-CM clinical trial of acoramidis in patients with ATTR cardiomyopathy. The study is expected to enroll more than 600 subjects with either wild-type or variant TTR across more than 80 sites in 18 countries. Topline results from Part A are expected in late 2021 or early 2022 and from Part B in 2023. If Part A is successful, the company intends to file for regulatory approval of acoramidis in 2022.

BridgeBio expects to launch two drugs, if approved, in 2021 and is building the capabilities necessary to deliver genetic medicines to patients around the globe, which it can deploy for acoramidis.

"ATTR is a rapidly progressive and fatal disease when left untreated, so we know that every moment counts for the patients and families we aim to serve. With Eidos fully reunited with BridgeBio, we intend to move as quickly as possible to advance acoramidis through the development process and, if approved, into the marketplace," said Cameron Turtle, D.Phil., senior vice president of cardiorenal disease at BridgeBio.

"The special committee of Eidos' Board believes that this transaction is in the best interest of the Eidos minority stockholders and offers them compelling value," said William Lis, chairman of the special committee of Eidos' Board. "The transaction recognizes the significant current value of acoramidis and allows the Eidos minority stockholders to participate in the potential future value of both acoramidis and the broader BridgeBio pipeline of over 20 novel medicines in development for genetic diseases."

BridgeBio anticipates several meaningful upcoming milestones across its portfolio over the next 12-18 months, including topline Phase 3 Part A data from acoramidis in ATTR cardiomyopathy, Phase 2 data from low-dose infigratinib (FGFR inhibitor) in achondroplasia, Phase 1/2 data from AAV5 gene therapy in congenital adrenal hyperplasia, and Phase 2 data from encaleret (calcium sensing receptor antagonist) in autosomal dominant hypocalcemia type 1.

**Additional Transactional Details**

Under the terms of the agreement, Eidos stockholders will be entitled to elect to receive the consideration for each share of Eidos common stock in all-stock or all-cash, subject

- 7 -

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

to proration such that the cash portion of the transaction will not exceed $175 million in the aggregate.

- **All-stock consideration**: 1.85 shares of BridgeBio common stock per Eidos share; or

- **All-cash consideration**: $73.26 in cash per Eidos share, subject to proration.

The merger consideration represents a 55% premium to the volume weighted average price of Eidos shares over the 30 trading days ending on October 2, 2020 and a 41% premium to the closing trading price of Eidos common shares on October 2, 2020, based on the closing trading price of BridgeBio shares on October 2, 2020.

Eidos stockholders who do not make an election will be deemed to have elected the all-stock consideration. The transaction is intended to be treated as a reorganization for U.S. federal income tax purposes, in which case gain would be recognized by the Eidos stockholders only to the extent of any cash consideration received. At closing, Eidos stockholders will own between 16% and 18% of BridgeBio, depending on the amount of cash Eidos stockholders elect to receive.

The transaction is not subject to a financing contingency. BridgeBio intends to fund the cash consideration with available cash on hand.

The transaction, which is expected to close in the first quarter of 2021, is subject to the approval of a majority of Eidos' shares held by stockholders other than BridgeBio and its affiliates. In addition, in accordance with Section 203 of the Delaware General Corporation Law, the transaction is also subject to the approval of at least 66-2/3% of Eidos' outstanding voting shares not currently owned by BridgeBio or its affiliates or associates (as such terms are defined in Section 203 of the Delaware General Corporation Law), as well as other customary closing conditions. The issuance of shares by BridgeBio will also need to be approved by the affirmative vote of a majority of the votes cast by BridgeBio's stockholders voting on such matter. Directors of BridgeBio and their affiliates, collectively owning approximately 36% of the outstanding BridgeBio shares, have agreed to enter into voting and support agreements and have agreed to vote in favor of the share issuance. There is no filing requirement under the Hart-Scott-Rodino Antitrust Improvements Act for this transaction.

Upon closing, Eidos will become a wholly owned subsidiary of BridgeBio and Eidos' common stock will cease trading independently on The Nasdaq Global Select Market.

**Insiders' Interests in the Proposed Transaction**

25.    Eidos insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders. The Board and the Company's executive officers are conflicted

- 8 -

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff and the public stockholders of Eidos.

26. Notably, Eidos insiders stand to reap substantial financial benefits for securing the deal with BridgeBio. Pursuant to the Merger Agreement, all outstanding options, restricted stock units ("RSU"), and restricted share awards will vest and convert into the right to receive the Merger Consideration. The following tables summarize the value of the options, RSU, and restricted share awards held by Company insiders:

| Name of Executive Officer | Number of Shares of Eidos Common Stock Subject to Unvested Eidos Options (#) | Total Value of Unvested Eidos Options ($) | Number of Shares of Eidos Common Stock Subject to Unvested Eidos Restricted Share Awards (#) | Total Value of Unvested Eidos Restricted Share Awards ($) |
|---|---|---|---|---|
| Neil Kumar, Ph.D. | — | — | — | — |
| Uma Sinha, Ph.D. | — | — | 21,617 | 1,583,661 |
| Cameron Turtle, D.Phil. | — | — | 10,424 | 763,662 |
| Jonathan C. Fox, M.D., Ph.D. | — | — | 29,503 | 2,161,390 |

| Name of Director | Number of Shares of Eidos Common Stock Subject to Unvested Eidos Options (#) | Total Value of Unvested Eidos Options ($) | Number of Shares of Eidos Common Stock Subject to Unvested Eidos Restricted Stock Units (#) | Total Value of Unvested Eidos Restricted Stock Units ($) |
|---|---|---|---|---|
| Suzanne Sawochka Hooper | 21,447 | 682,872 | 4,526 | 331,575 |
| Douglas "Duke" Rohlen | 21,447 | 682,872 | 4,526 | 331,575 |
| William Lis | 35,880 | 1,388,053.68 | — | — |
| Ali Satvat | 50,232 | 1,292,325.84 | — | — |

**The Proxy Statement Contains Material Misstatements or Omissions**

27. The defendants filed a materially incomplete and misleading Proxy Statement with the SEC and disseminated it to Eidos's stockholders. The Proxy Statement misrepresents or omits material information that is necessary for the Company's stockholders to make an informed decision whether to vote in favor of the Proposed Transaction.

28. Specifically, as set forth below, the Proxy Statement fails to provide Company stockholders with material information or provides them with materially misleading information concerning: (i) Eidos and BridgeBio management's financial projections; (ii) the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by the Special Committee's financial advisor, Centerview; (iii) Centerview's potential conflicts of interest; and (iv)

- 9 -

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

the background of the Proposed Transaction.  Accordingly, Eidos stockholders are being asked to vote in favor of the Proposed Transaction without all material information at their disposal.

***Material Omissions Concerning the Financial Projections***

29.     The Proxy Statement omits material information regarding Eidos and BridgeBio management's financial projections.

30.     The Proxy Statement sets forth that:

> On August 21, 2019, BridgeBio granted the members of the 2019 special committee, Centerview and Cravath access to an electronic data room containing certain due diligence materials regarding BridgeBio, including a management presentation and certain financial projections for BridgeBio (excluding Eidos) prepared by BridgeBio management.

> Later on August 21, 2019, Eidos granted the members of the 2019 special committee, Centerview and Cravath access to an electronic data room containing certain due diligence materials regarding Eidos, including certain internal financial projections for Eidos prepared by Eidos management.

Proxy Statement at 64-65.  The Proxy Statement then sets forth:

> On September 6, 2019, the 2019 special committee held a telephonic meeting to review the Eidos financial projections provided by management of Eidos and the BridgeBio financial projections provided by management of BridgeBio and the key assumptions underlying such projections, with representatives of Centerview, Cravath and Navigant participating . . . ***after discussion, the 2019 special committee noted that it would be appropriate to make adjustments to the management projections, including adjustments based on the 2019 special committee's assessment of the probability of success and underlying product assumptions of each product candidate***. Representatives of Navigant discussed their assessment of the key assumptions underlying the management projections and potential revisions to such projections based on Navigant's research. After discussion regarding these assumptions and potential adjustments, the 2019 special committee requested that Centerview present adjusted projections reflecting the adjustments that had been discussed for the 2019 special committee's review at the next committee meeting.

*Id.* at 65 (emphasis added).  The Proxy Statement fails, however, to disclose (i) BridgeBio management's financial projections for BridgeBio provided to the 2019 special committee of the Board ("2019 Special Committee") in August 2019 (the "2019 BridgeBio Projections") and Eidos management's financial projections for Eidos provided to the 2019 Special Committee in August

- 10 -

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

2019 (the "2019 Eidos Projections"); and (ii) the adjustments based on the 2019 Special Committee's assessment of the probability of success and other assumptions underlying each product candidate, made to the 2019 BridgeBio Projections and the 2019 Eidos Projections.

31.    The Proxy Statement further states that:

Later on September 10, 2020, BridgeBio made available to the Eidos special committee and its advisors via an electronic data room BridgeBio management's projections for BridgeBio (excluding Eidos) that had been updated to reflect recent developments and management's current assumptions, which projections are referred to as the "BridgeBio management projections" (see the section entitled "—*Certain Unaudited Prospective Financial Information*").

* * *

On September 24, 2020, the Eidos special committee held a videoconference meeting, with representatives of Centerview, Cravath and Guidehouse participating. Representatives of Guidehouse reviewed the assumptions underlying the BridgeBio management projections and assumptions regarding Eidos that had been discussed with Eidos management during due diligence calls, as well as Guidehouse's recommended adjustments to such assumptions. The Eidos special committee discussed the assumptions made by management of BridgeBio and Eidos as well as Guidehouse's recommended adjustments, and directed Centerview to make additional adjustments to the BridgeBio management projections.

On September 25, 2020, the Eidos special committee held a videoconference meeting, with representatives of Centerview and Cravath participating. Representatives of Centerview reviewed the BridgeBio management projections, including the impact of adjustments discussed at the meeting of the Eidos special committee on September 24, 2020. After discussion, the Eidos special committee requested that Centerview and Guidehouse conduct additional due diligence regarding certain assumptions and prepare further adjusted projections for each of Eidos and BridgeBio reflecting such assumptions for further discussion with the Eidos special committee.

*Id*. at 74-75.    The Proxy Statement fails to disclose and quantify the adjustments the Special Committee directed Centerview to make to the BridgeBio management projections on September 24, 2020 and to both the Eidos and BridgeBio projections on September 25, 2020.

32.    Moreover, the Proxy Statement sets forth that in connection with rendering its fairness opinion, Centerview reviewed "certain tax and other cost savings and operating synergies projected by the Eidos special committee to result from the transaction furnished to Centerview by the Eidos

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

special committee for purposes of Centerview's analysis (referred to in this summary of Centerview's opinion as the "synergies")." *Id*. at 96. Yet, the Proxy Statement fails to disclose the synergies projected by the Special Committee and reviewed by Centerview for purposes of its analyses. The Proxy Statement also fails to disclose, for each set of financial projections, all line items underlying the calculation of unlevered free cash flow and EBIT.

33.	The omission of this material information renders the statements in the "Background of the Mergers," "Certain Unaudited Prospective Financial Information" and "Opinion of the Eidos Special Committee's Financial Advisor" sections of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

***Material Omissions Concerning Centerview's Financial Analyses***

34.	The Proxy Statement omits material information regarding Centerview's financial analyses.

35.	The Proxy Statement describes Centerview's fairness opinion and the various valuation analyses it performed in support of its opinion. However, the description of Centerview's fairness opinion and analyses fails to include key inputs and assumptions underlying these analyses. Without this information, as described below, Eidos's public stockholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on Centerview's fairness opinion in determining whether to vote in favor of the Proposed Transaction.

36.	With respect to Centerview's *Discounted Cash Flow Analysis* of Eidos, the Proxy Statement fails to disclose: (i) Centerview's basis for assuming that Eidos's after-tax unlevered free cash flows for the terminal year would decline 80% year-over-year in perpetuity; (ii) quantification of the inputs and assumptions underlying the discount rates ranging from 10.0% to 12.0%; (iii) the net present value of federal net operating losses and future losses; and (iv) the number of fully diluted outstanding shares of Eidos common stock as of October 2, 2020.

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

37. With respect to Centerview's *Discounted Cash Flow Analysis* of BridgeBio, the Proxy Statement fails to disclose: (i) Centerview's basis for assuming that BridgeBio's after-tax unlevered free cash flows for the terminal year would decline 80% year-over-year in perpetuity; (ii) quantification of the inputs and assumptions underlying the discount rates ranging from 10.0% to 12.0%; (iii) the net present value of federal net operating losses and future losses; and (iv) the number of fully diluted outstanding shares of BridgeBio common stock as of October 2, 2020.

38. With respect to Centerview's *Analyst Price Target Analysis*, the Proxy Statement fails to disclose: (i) the individual price targets observed; and (ii) the sources thereof.

39. With respect to Centerview's *Precedent Premiums Paid Analysis*, the Proxy Statement fails to disclose: (i) the selected transactions reviewed in the analysis; and (ii) the individual premiums paid in each of the selected transactions.

40. Without such undisclosed information, Eidos stockholders cannot evaluate for themselves whether the financial analyses performed by Centerview were based on reliable inputs and assumptions or whether they were prepared with an eye toward ensuring that a positive fairness opinion could be rendered in connection with the Proposed Transaction.  In other words, full disclosure of the omissions identified above is required in order to ensure that stockholders can fully evaluate the extent to which Centerview's opinion and analyses should factor into their decision whether to vote in favor of or against the Proposed Transaction.

41. The omission of this material information renders the statements in the "Opinion of the Eidos Special Committee's Financial Advisor" section of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

***Material Omissions Concerning Centerview's Potential Conflicts of Interest***

42. The Proxy Statement fails to disclose material information concerning the potential conflicts of interest faced by Centerview.

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

43.    The Proxy Statement sets forth:

In 2019, Centerview was engaged to provide financial advisory services to the 2019 special committee in connection with such committee's evaluation of strategic alternatives, including a potential transaction between BridgeBio and Eidos. In connection with such services provided to the 2019 special committee, in the second quarter of 2020, Centerview became entitled to receive fees from Eidos of $5 million, $2.5 million of which was paid by Eidos to Centerview in the third quarter of 2020 and the remaining $2.5 million of which may become payable in the future upon satisfaction of certain conditions. Such fees will be creditable against the fee that is payable to Centerview contingent upon the consummation of the mergers.

*Id*. at 104.  The Proxy Statement fails, however, to disclose the specific conditions Centerview must satisfy to receive the remaining $2.5 million in compensation and whether Eidos anticipates paying Centerview that $2.5 million.

44.    Full disclosure of investment banker compensation and all potential conflicts is required due to the central role played by investment banks in the evaluation, exploration, selection, and implementation of strategic alternatives.

45.    The omission of this material information renders the statements in the "Opinion of the Eidos Special Committee's Financial Advisor" section of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

***Material Omissions Concerning the Background of the Proposed Transaction***

46.    The Proxy Statement omits material information relating to the background process leading to the Proposed Transaction.

47.    For example, the Proxy Statement sets forth that after a November 28, 2020 Board meeting, Eidos's legal counsel shared a draft confidentiality agreement with a large international pharmaceutical company identified in the Proxy Statement as "Company C."  The Proxy Statement, however, fails to disclose whether Eidos and Company C executed the confidentiality agreement and, if so, whether the confidentiality agreement includes a "don't-ask, don't-waive" standstill provision that operates to preclude Company C from submitting future proposals for the Company.

48.     Additionally, the Proxy Statement sets forth that:

On November 30, 2020, Company C provided a letter to Eidos (the "November 30 Company C letter"), indicating possible alternative paths and noting that Company C remained interested, on a non-binding basis, in (i) acquiring all of the outstanding shares of Eidos common stock for more than the $120 per share of Eidos common stock indicated in the November 23 Company C letter, contingent upon Company C's ability to engage in discussions with BridgeBio directly to explore its willingness to entertain a transaction at a higher valuation, (ii) acquiring the shares of Eidos common stock held by stockholders other than BridgeBio and its subsidiaries for $110 per share in cash (which proposal was contingent upon Company C receiving the Company C governance rights) and (iii) a potential commercial collaboration between Eidos and Company C, without indicating terms for such a collaboration.

*Id.* at 84.  Following discussions between Company C, Eidos and BridgeBio in which Company C provided additional details on each of its proposals, BridgeBio determined that none of Company C's proposals were attractive and was not willing to engage in any type of transaction proposed by Company C.  The Proxy Statement, however, fails to disclose the Special Committee's response to BridgeBio's refusal to entertain any of Company C's proposals, especially in light of the fact that Company C's all cash offers were approximately ***$37 and $47 per share higher*** than the cash consideration Eidos agreed to in the Merger Agreement.

49.     The omission of this material information renders the statements in the "Background of the Mergers" section of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

50.     The Individual Defendants were aware of their duty to disclose the above-referenced omitted information and acted negligently (if not deliberately) in failing to include this information in the Proxy Statement.  Absent disclosure of the foregoing material information prior to the stockholder vote on the Proposed Transaction, Plaintiff and the other stockholders of Eidos will be unable to make an informed voting decision in connection with the Proposed Transaction and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

- 15 -

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

## CLAIMS FOR RELIEF

## COUNT I

**Claims Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder**

51.     Plaintiff repeats all previous allegations as if set forth in full.

52.     During the relevant period, defendants disseminated the false and misleading Proxy Statement specified above, which failed to disclose material facts necessary to make the statements, in light of the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

53.     By virtue of their positions within the Company, the defendants were aware of this information and of their duty to disclose this information in the Proxy Statement.  The Proxy Statement was prepared, reviewed, and/or disseminated by the defendants.  It misrepresented and/or omitted material facts, including material information about Eidos and BridgeBio management's financial projections, the financial valuation analyses that support the fairness opinion provided by the Special Committee's financial advisor, Centerview, Centerview's potential conflicts of interest, and the background of the Proposed Transaction.  The defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

54.     The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder would consider them important in deciding how to vote on the Proposed Transaction.

55.     By reason of the foregoing, the defendants have violated Section 14(a) of the Exchange Act and SEC Rule 14a-9(a) promulgated thereunder.

56.     Because of the false and misleading statements in the Proxy Statement, Plaintiff is threatened with irreparable harm, rendering money damages inadequate.  Therefore, injunctive relief is appropriate to ensure defendants' misconduct is corrected.

- 16 -

## COUNT II

### Claims Against the Individual Defendants for
### Violations of Section 20(a) of the Exchange Act

57.     Plaintiff repeats all previous allegations as if set forth in full.

58.     The Individual Defendants acted as controlling persons of Eidos within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers and/or directors of Eidos, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

59.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

60.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.  The Proxy Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction.  They were, thus, directly involved in the making of the Proxy Statement.

61.     In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction.  The Proxy Statement purports to describe the various issues and information that they reviewed and considered—descriptions the Company directors had input into.

- 17 -

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

62.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

63.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and SEC Rule 14a-9, promulgated thereunder, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of defendants' conduct, Eidos's stockholders will be irreparably harmed.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor on behalf of Eidos, and against defendants, as follows:

A.     Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until defendants disclose and disseminate the material information identified above to Eidos stockholders;

B.     In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C.     Declaring that defendants violated Sections 14(a) and/or 20(a) of the Exchange Act, as well as SEC Rule 14a-9 promulgated thereunder;

D.     Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E.     Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all claims and issues so triable.

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

Dated: December 23, 2020

**WEISSLAW LLP**
Joel E. Elkins

By: */s/ Joel E. Elkins*

Joel E. Elkins
9100 Wilshire Boulevard #725 E.
Beverly Hills, CA 90210
Telephone:  310/208-2800
Facsimile:   310/209-2348
                   -and-
Richard A. Acocelli
1500 Broadway, 16th Floor
New York, NY  10036
Telephone: 212/682-3025
Facsimile:  212/682-3010

*Attorneys for Plaintiff*

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS